M.D. HORN and Lucy B. Horn, Plaintiffs,

v.

EFFORT SHIPPING CO., LTD., and Atlantis Marine, P.G., S.A., Defendants.

Civ. A. No. 89–0211–AH.

United States District Court, S.D. Alabama, S.D.

Nov. 13, 1991.

Mitchell G. Lattof, Lattof & Lattof, Mobile, Ala., for plaintiffs.

Abe Philips, Reams, Philips, Killion, Brooks, Schell, Gaston & Hudson, Mobile, Ala., for defendants.

## ORDER

HOWARD, Chief Judge.

This matter is before the Court on the question whether this Court may exercise in personam jurisdiction over the defendants. For the following reasons, this Court finds that the exercise of in personam jurisdiction over the defendants in this case is proper.

## I. FACTS

On March 21, 1989 this personal injury action was removed to this Court on the basis of both federal question and diversity jurisdiction. [Doc. # 1] This action is a suit to recover damages arising out of an injury alleged to have been sustained by M.D. Horn while working as a longshoreman on board a ship owned by the defendant Effort Shipping Company ("Effort Shipping") and operated by the defendant Atlantis Marine P.G., S.A. ("Atlantis Marine"). Horn's wife, Lucy B. Horn, is suing for loss of consortium.

The facts of this case as revealed by the plaintiffs' complaint and Atlantis Marine's affidavit, construing all reasonable inferences in favor of the plaintiffs where the two conflict, are as follows. In May of 1987, Mr. Horn was a longshoreman employed to load and unload cargo in the service of the *M/V Rhapsody*, a vessel moored in the Port of Mobile in the Southern District of Alabama. On May 12, Mr. Horn was descending a "Jacob's ladder" furnished by the *Rhapsody*'s crew when it broke and sent him plummeting 20 feet into the hold of a barge moored adjacent to the *Rhapsody*. Horn suffered a fractured leg and foot from his fall, as well as multiple bruises, contusions and sprains, and claims that his injuries are permanent.

The *Rhapsody* is owned by Effort Shipping and at the time of the accident was chartered out to ATL (Project Carriers) Ltd. and operated by Atlantis Marine. Atlantis Marine, a Panamanian corporation, has its home office and principal place of business in Piraeus, Greece. Atlantis Marine's contacts with the United States are minimal.[1] At the time of Mr. Horn's accident, Atlantis Marine was operating the *Rhapsody* pursuant to an agreement with Effort Shipping entered into outside the United States, and the vessel had come to the Port of Mobile at the direction of and in the performance of the business of the charterer, with whom Atlantis Marine has no relationship. [Affidavit of Constantinos Tsatiris, Doc. # 37, pp. 3–4]

1. The uncontradicted affidavit of Constantinos Tsatiris, one of its directors, states that:

Atlantis Marine P.G., S.A. does not have, and has never had, an office [or] place of business in the Southern District of Alabama nor elsewhere in the United States. It does not now have, and it has never had, officers, directors, employees[,] or other personnel stationed in the United States, although from time to time people connected with the company travel throughout the world, including the United States.

It does not own, and has never owned, real or personal property located in the United States. It does not have, and has never had or maintained, bank accounts in the United States. None of the officers, directors or owners of the company are citizens of the United States and none of them reside in or have ever resided in, the United States. The company does not have and has never had[ ] an appointed agent in the United States. The company does not advertise, and has never advertised, directly in any publication or other media in the Southern District of Alabama[. I]t does advertise in trade publications of general circulation in the world, but none of them are published in the Southern District of Alabama. The company does not own, operate, charter, manage or have any relationship with any U.S. flag vessel, and it has never done so. The company has never owned any vessel that called at a United States port while owned by the company. The company has never been charterer of any vessel that called at a United States port while chartered to the company.

[Affidavit of Constantinos Tsatiris, Doc. # 37, pp. 2–3]

The defendant Atlantis Marine has been dismissed from this action once already. On September 29, 1989 Atlantis Marine filed a "Motion to Quash Service of Process and to Dismiss" [Doc. # 10]. On December 26, 1989, this Court ordered the plaintiffs to respond to the motion by January 19, 1990. [Doc. # 14] There was no response, and on January 29 this Court dismissed Atlantis Marine. [Doc. # 16] On June 15, 1990, the plaintiffs filed a "Motion to Reverse Dismissal of Defendant, Atlantis Marine P.G., S.A." [Doc. # 21], which the Court granted on August 9 [Doc. # 22]. On October 22, 1990, both Effort Shipping and Atlantis Marine answered the complaint. [Docs. ## 25–26]

On February 22, 1991, Magistrate Judge William E. Cassady ordered the parties to file briefs and affidavits on the issue of whether this Court has in personam jurisdiction over the defendants. In response to Judge Cassady's Order, Atlantis Marine filed an affidavit and brief on the personal jurisdiction issue on April 2, 1991, supplementing it on April 9. [Doc. # 37]. The plaintiffs responded on April 22. [Doc. # 41] The defendant Effort Shipping has not filed a brief.

## II. PERSONAL JURISDICTION

The United States Court of Appeals for the Eleventh Circuit, in *Madara v. Hall,* 916 F.2d 1510 (11th Cir.1990), outlined the structure of this Court's analysis in determining personal jurisdiction issues:

> When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the dis-

trict court must construe all reasonable inferences in favor of the plaintiff. *Id.*

> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990); *Alexander Proudfoot Co. [World Headquarters L.P. v. Thayer],* 877 F.2d [912,] 919. First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.,* 902 F.2d at 855; *Alexander Proudfoot Co.,* 877 F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *Cable/Home Communication Corp.,* 902 F.2d at 855; *Alexander Proudfoot Co.,* 877 F.2d at 919. Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

*Id.* at 1514.

### A. ALABAMA LONG–ARM STATUTE

The reach of the Alabama long-arm statute is equal to that of the Federal Constitution. Ala.R.Civ.P. 4.2(a)(2)(I). Therefore, the two questions of the personal jurisdiction analysis collapse into one and the only issue is whether a defendant has the "minimum contacts" with the state required for the assertion of personal jurisdiction by the Due Process Clause of the Federal Constitution as interpreted in *International Shoe* and its progeny.

### B. DUE PROCESS ANALYSIS

■ The Due Process analysis regarding personal jurisdiction is a two-pronged inquiry. First, the Court must decide wheth-

er a defendant has established "minimum contacts" with the forum state. Second, if a defendant has established such minimum contacts, the Court must decide whether the exercise of personal jurisdiction over the defendant is reasonable and would not offend "traditional notions of fair play and substantial justice." *Madara,* 916 F.2d at 1516.

### 1. "Minimum Contacts"

The United States Court of Appeals for the Eleventh Circuit has distilled the Supreme Court's holdings on the issue of "minimum contacts" into a jurisdictional homily. As the Eleventh Circuit explains:

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in the judgement). This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, *Keeton [v. Hustler Magazine, Inc.],* 465 U.S. [770,] 774, 104 S.Ct. [] 1473, [79 L.Ed.2d 790 (1984)], and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).
>
> Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). However,
>
> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the re-

quirement of contact with the forum State ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

> *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, *reh'g denied,* 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478, or because of the unilateral activity of a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is *not* the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987).

*Madara,* 916 F.2d at 1516–17.

Following the analysis set out by the Eleventh Circuit demonstrates that Atlantis Marine had the requisite "minimum contacts" with the Southern District of Alabama for this Court's assertion of personal jurisdiction over it. There is no question but that Atlantis Marine purposely directed its activities at this forum when, in its operation of the *Rhapsody,* it brought the vessel into the Port of Mobile for the loading and unloading of cargo. Moreover, this

litigation clearly results from alleged injuries that arose out of or relate to Atlantis Marine's activities in the Port of Mobile, for Mr. Horn is claiming that, while working aboard the *Rhapsody*, he was injured by a rope ladder provided by Atlantis Marine's employees. Atlantis Marine's contacts with the Southern District of Alabama resulted from its own actions and its conduct was unquestionably of such a character that it had fair warning it was subjecting itself to personal jurisdiction in the forum.

Atlantis Marine's argument that its lack of ownership interest in the *Rhapsody* insulates it from personal jurisdiction seems to dwell on the irrelevant. If this argument were the law, then a chauffeur who is involved in an automobile accident in Alabama on his way from Florida to Mississippi would be immune to suit in this forum simply because he is the car's driver rather than its owner. "Purposeful availment" of the forum and not ownership in the instrument of the accident is the touchstone of "minimum contacts" analysis, and this Court finds that the plaintiffs have met their burden of showing Atlantis Marine's "minimum contacts" with the forum.

2. "Fair Play and Substantial Justice"

The Eleventh Circuit has also neatly woven together the Supreme Court's pronouncements on the second prong of the due process analysis:

Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in the light of other factors to decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co.*, 326 U.S. at 320, 66 S.Ct. at 160). These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184; *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities. *Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2185. Conversely, these considerations may serve to establish the reasonableness of jurisdiction under a lesser showing of minimum contacts than would be otherwise required. *Id.* at 477, 105 S.Ct. at 2184.

*Madara*, 916 F.2d at 1517.

Examination of the listed factors demonstrates that the exercise of personal jurisdiction over Atlantis Marine in this case is reasonable. The burden of defending the lawsuit on Atlantis Marine, a multi-national corporation, does not seem great. To the extent there is a burden on Atlantis Marine it seems clearly outweighed by the plaintiffs' interest in obtaining convenient and effective relief, because forcing the Horns to bring this action in Greece or Panama effectively forecloses them from relief. Moreover, the forum state has an interest in adjudicating the dispute. Many international ships use the Port of Mobile and hire local residents who need a local forum to seek redress for work-related injuries. Finally, the international context does not counsel reserve in extending personal jurisdiction into the international field in this case. Unlike in *Asahi Metal*, the plaintiffs are American citizens and were injured by the alleged negligence of the defendant within the American jurisdiction rather than by a small part which arrived in the country in the stream of commerce built into a larger item. Therefore, this Court finds that it is not unreasonable to exercise personal jurisdiction over Atlantis Marine in this case.

## III. CONCLUSION

This Court finds that the plaintiffs have established a prima facie case of personal jurisdiction over Atlantis Marine. While Atlantis Marine's contacts with this forum may indeed have been minimal, they were yet substantial enough to qualify as the constitutionally required "minimum contacts," and assertion of personal jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." Because Effort Shipping has not briefed this issue, the Court has not considered the personal jurisdiction issue with respect to that defendant, but deems Effort Shipping to have waived the defense.